**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

THOMAS M. STONE,
Plaintiff-Appellee,

v.

No. 95-1110

LIBERTY MUTUAL INSURANCE
COMPANY,
Defendant-Appellant.

THOMAS M. STONE,
Plaintiff-Appellant,

v.

No. 95-1148

LIBERTY MUTUAL INSURANCE
COMPANY,
Defendant-Appellee.

Appeals from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Raymond A. Jackson, District Judge.
(CA-94-560-2)

Argued: December 4, 1995

Decided: January 28, 1997

Before HAMILTON, WILLIAMS, and MOTZ, Circuit Judges.

_____

Reversed and remanded with instructions by published opinion. Judge
Williams wrote the opinion, in which Judge Hamilton and Judge
Motz joined.

_____

**COUNSEL**

**ARGUED:** Alan Brody Rashkind, FURNISS, DAVIS, RASHKIND & SAUNDERS, P.C., Norfolk, Virginia, for Appellant. Robert Lee Samuel, Jr., CLARK & STANT, P.C., Virginia Beach, Virginia, for Appellee. **ON BRIEF:** Stephen C. Swain, S. Geoffrey Glick, CLARK & STANT, P.C., Virginia Beach, Virginia, for Appellee.

_____

**OPINION**

WILLIAMS, Circuit Judge:

We certified a question of Virginia substantive law to the Supreme Court of Virginia, which has now answered our question. See Stone v. Liberty Mut. Ins. Co., No 96-0412, 1996 WL 726888 (Va. Dec. 16, 1996). Applying Virginia law as articulated in Stone, we conclude that Thomas Stone is not an "insured" for purposes of the Virginia uninsured/underinsured motorist statute, see Va. Code Ann. § 38.2-2206 (Michie Supp. 1996), and therefore is ineligible to receive uninsured motorist benefits under Tidewater Pizza, Incorporated's insurance policy with Liberty Mutual Insurance Company. Accordingly, we reverse the judgment of the district court and remand with instructions to enter judgment in favor of Liberty Mutual.

I.

A.

The facts are recited in our order of certification as well as the opinion of the Supreme Court of Virginia, see Stone, 1996 WL 726888, at *1-*2. Therefore, we shall only briefly repeat them here. Liberty Mutual issued a commercial business automobile policy to Tidewater Pizza, naming Tidewater Pizza as the insured and insuring two automobiles, a Honda and a Ford, both of which were owned by Tidewater Pizza. The policy provided uninsured[1] motorist coverage

_____

[1] The parties and the Supreme Court of Virginia used the term "uninsured" to refer to both underinsured and uninsured drivers. For the sake of consistency, we shall do likewise.

2

with limits of $350,000 to two classes of potential insureds: Tidewater Pizza and its family members; and persons occupying a "covered auto."

The policy defined "insureds" as:

> 1. <u>You</u> are an <u>insured</u> for any covered <u>auto</u>.
>
> 2. Anyone else is an <u>insured</u> while using with <u>your</u> permission a covered <u>auto you</u> own, hire or borrow except:
>
> a. The owner of a covered <u>auto you</u> hire or borrow from one of <u>your</u> employees or a member of his or her household.
>
> b. Someone using a covered <u>auto</u> while he or she is working in a business of selling, servicing, repairing or parking <u>autos</u> unless that business is <u>yours</u>.
>
> c. Anyone other than <u>your</u> employees, a lessee or borrower or any of their employees, while moving property to or from a covered <u>auto</u>.
>
> 3. Anyone liable for the conduct of an <u>insured</u> described above is an insured but only to the extent of that liability. However, the owner or anyone else from whom <u>you</u> hire or borrow a covered <u>auto</u> is an <u>insured</u> only if that <u>auto</u> is a <u>trailer</u> connected to a covered <u>auto you own</u> .

(J.A. at 47.)

The policy defined "covered auto" for purposes of liability coverage to include automobiles Tidewater Pizza did not own, lease, hire, or borrow but which it used in connection with its business; but for purposes of uninsured motorist coverage, the term "covered auto" was defined to include "[o]nly those <u>autos you</u> own which, because of the law in the state where they are licensed or principally garaged, are required to have and cannot reject uninsured motorists insurance."

3

(J.A. at 26.) Stone conceded that he was not occupying a motor vehicle owned, leased, hired, or borrowed by Tidewater Pizza.

B.

Stone was a part-time employee of Tidewater Pizza, for whom he delivered pizzas. In making his deliveries, Stone used his own automobile and was responsible for providing his own transportation. Stone's automobile was not owned, leased, hired, or borrowed by Tidewater Pizza, nor was Stone's automobile listed on Tidewater Pizza's policy with Liberty Mutual. While Stone was lawfully operating his automobile in the scope of his employment, he was struck by an automobile driven by Carol Drye. As a result of this collision, Stone suffered serious physical injuries. Consequently, he successfully sued Drye in state court and obtained a judgment of $250,000 plus interest and costs.

Drye's liability insurance coverage, however, was limited to $25,000. Therefore, to satisfy his judgment, Stone filed a declaratory judgment action in Virginia state court against Liberty Mutual, seeking a declaration that he was entitled to uninsured motorist coverage under Tidewater Pizza's policy with Liberty Mutual. The case was removed to federal district court on the basis of diversity of citizenship, and the parties filed cross-motions for summary judgment.

The district court concluded that the policy violated Virginia's uninsured/underinsured motorist statute, see Va. Code Ann. § 38.2-2206A (Michie Supp. 1996), by failing to provide uninsured motorist coverage equal to the liability coverage it extended to drivers of covered automobiles like Stone. Accordingly, the district court granted summary judgment in favor of Stone, reforming the policy to provide uninsured coverage for Stone in the amount of $225,000 plus costs and interest.[2] We expressed concern regarding the district court's

_____

[2] The district court rejected Stone's alternative contention that he was covered under the policy because he was a "family member" of Tidewater Pizza and thereby "insured" under the policy and subsection 38.2-2206B of the Code of Virginia, see Va. Code Ann. § 38.2-2206B (Michie Supp. 1996). Explaining that the term "family member" as defined both

4

holding that Liberty Mutual was liable, and finding no Virginia authorities directly controlling, we certified this question to the Supreme Court of Virginia: Whether Tidewater Pizza's policy with Liberty Mutual violated subsection 38.2-2206A, because Stone is an insured under subsection 38.2-2206B. In light of the Supreme Court of Virginia's answer to our question, our concern was well-founded.

## II.

Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who,"after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To prevail on a motion for summary judgment, a party must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If the evidence "is so one-sided that one party must prevail as a matter of law," we must affirm the grant of summary judgment in that party's favor. Id. at 252. A party"cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). As the Anderson Court explained,"[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. We review a district court's grant of summary judgment de novo. See Cooke v. Manufactured Homes, Inc., 998 F.2d 1256, 1260 (4th Cir. 1993). Guided by this procedural standard, we analyze Stone's claim.

_____

in subsection 38.2-2206B and the policy was unambiguous, the district court relied on Insurance Co. of North America v. Perry, 134 S.E.2d 418 (Va. 1964), to conclude that Stone was not a "family member" of Tidewater. Stone cross-appeals the district court's alternative ruling. We agree with the district court that the rationale of Perry controls disposition of this issue and affirm that portion of the district court's order. Accordingly, that issue was not certified to the Supreme Court of Virginia.

5

A.

The Virginia uninsured motorist insurance statute provides in pertinent part:

> [N]o policy or contract of bodily injury or property damage liability insurance relating to the ownership, maintenance, or use of a motor vehicle shall be issued or delivered . . . to the owner of such vehicle or shall be issued or delivered by any insurer licensed . . . upon any motor vehicle principally garaged or used in this Commonwealth unless it contains an endorsement or provisions undertaking to pay the insured all sums that he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits not less than [those provided by statute]. Those limits shall equal but not exceed the limits of the liability insurance provided by the policy, unless any one named insured rejects the additional uninsured motorist insurance coverage . . . . The endorsement or provisions shall also obligate the insurer to make payment for bodily injury or property damage caused by the operation or use of an underinsured motor vehicle to the extent the vehicle is underinsured, as defined in subsection B of this section.[3]

Va. Code Ann. § 38.2-2206A (Michie Supp. 1996). According to the Supreme Court of Virginia, subsection 38.2-2206A "merely recit[es] those circumstances under which policies providing bodily injury liability insurance . . . must contain endorsements agreeing to pay `the insured' certain sums that such insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle." Stone, 1996 WL 726888 at *4. As applied here, subsection 38.2-2206A does not "require that all the same vehicles and insureds be covered under both liability and uninsured motorist coverages of the same policy." Id. Thus, although this subsection mandates that limits of uninsured motorist coverage be equal to the limits of liability insurance, it does

_____

[3] Since Stone's accident, the Virginia legislature has amended the relevant statutory sections. Because the amendments are minor and in no way affect the disposition of this case, we quote from the current statutory language.

6

not mandate that all types of coverage be similar. Standing alone, therefore, subsection 38.2-2206A does not render Liberty Mutual liable for Stone's injuries. Because subsection 38.2-2206A does not provide coverage for Stone, we turn to subsection 38.2-2206B to determine if it extends coverage to Stone.

B.

The uninsured motorist statute defines "insured":

> "Insured" as used in subsection[ ] A . . . of this section means the named insured and, while resident of the same household, the spouse of the named insured, and relatives, wards or foster children of either, while in a motor vehicle or otherwise, and any person who uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured, and a guest in the motor vehicle to which the policy applies or the personal representative of any of the above.

Va. Code Ann. § 38.2-2206B (Michie Supp. 1996). Under this subsection, the Supreme Court of Virginia concluded that Liberty Mutual is not liable to Stone, offering two reasons to support its conclusion. First, the court examined the language of the subsection, which it concluded excluded Stone's automobile from coverage. Second, the court explained that Tidewater Pizza simply lacked authority under the Liberty Mutual policy to permit Stone to use his own automobile, yet be covered under the policy.

First, in analyzing subsection 38.2-2206B, the Supreme Court of Virginia examined the term "motor vehicle." According to the court, the language of this subsection does not refer to"`a,' `any,' `every,' or `all,'" motor vehicles, but specifically to"`the' motor vehicle." Stone, 1996 WL 726888, at *4. Such precise, exclusive language necessarily means "the Honda" or "the Ford" -- automobiles owned by Tidewater Pizza -- not any other automobile, such as Stone's automobile. See id.

Second and paramount, the court explained that one operating a "motor vehicle must do so `with the expressed or implied consent of

7

the named insured,'" id. at *4, and here the named insured, Tidewater Pizza, "cannot give permission to use a vehicle that the named insured does not own," id. at *5. Because Tidewater Pizza did not own Stone's automobile, it could not grant him permission to use his automobile for purposes of coverage under its policy with Liberty Mutual. In reaching this conclusion, the court rejected Stone's contentions that he was operating a "covered auto" or that he had the implied consent of Tidewater Pizza to use his automobile because he was performing duties within the scope of his employment:

> The "expressed or implied consent" language of the subsection modifies "the motor vehicle to which the policy applies" clause. If the legislature . . . had meant to include as insureds of the second class occupants of non-owned vehicles, [it] would have used [such] language. . . . The uninsured motorist statute contains no such expansive language.

> Simply put, "the vehicle" referred to in subsection (B) includes only owned, not non-owned vehicles. Thus, there is no statutory mandate that requires the courts to ignore the insurer's policy language as written.

Id. Stone, therefore, is not covered under the policy. Consequently, Liberty Mutual is not liable. Given this conclusion, the judgment of the district court must be reversed with instructions to grant judgment in favor of Liberty Mutual.

III.

Applying Virginia law, the Supreme Court of Virginia concluded that Stone was not an insured under the Liberty Mutual policy issued to Tidewater Pizza, and we must honor this conclusion. Therefore, we reverse the judgment of the district court and remand with instructions to grant judgment in favor of Liberty Mutual.

REVERSED AND REMANDED WITH INSTRUCTIONS